### 33403. WILLIAMS et al. v. OWEN et al.

HALL, Justice.

This is a lawsuit brought by certain students of North Georgia College challenging a regulation termed the "commuter student" rule under which dormitory residence is required of most students. The regulation is primarily attacked on federal constitutional grounds as a violation of the rights of privacy, free association, and travel, and as a denial of equal protection of the laws to males. We rule that the regulation is not invalid for any reason alleged, and we affirm the trial court which upheld the constitutionality of the regulation and denied the temporary injunction against its enforcement sought by the students.

#### The College and the Rule

The college, located in Dahlonega, is a state supported, coeducational unit of the University System of Georgia, and is governed by the State Board of Regents. The enrollment approaches 2,000 students, of whom slightly fewer than half are males. The college was founded in 1873 primarily as a military institution, and is presently one of only four senior colleges in the United States classified as a military college by the United States Department of the Army. (The others are The Citadel, Virginia Military Institute, and Norwich University.) All resident male students must become members of the Corps of Cadets and abide by regulations similar to those of the service academies. Qualified students may be commissioned officers in the regular Army or United States Army Reserve upon graduation.

It is a long-established policy of the college that all students, with certain limited exceptions, must reside on campus. For males, this also triggers the requirement to enter the Corps of Cadets.

For all practical purposes, this is a statement of the commuter student rule: "1. All unmarried undergraduate

students are required to live in residence halls. Exceptions to this policy may be made in the following cases: a. Students who live in and commute from the residence of parents, grandparents or legal guardians within a 40 mile radius of Dahlonega. b. Students who have a baccalaureate degree. c. Students who have completed 12 quarters in residence and male students who have fulfilled the prescribed military courses and activities. d. Students who have been honorably discharged after one full year of military service. e. Students who have successfully completed induction. f. Students over 24 years of age."

### History of the Litigation

At the time the college invoked against them disciplinary actions which are not challenged and need not be detailed here, Alan and Gregory Williams, brothers, were students at North Georgia College but were living in an apartment and not with their parents or guardians. Under the rule, they did not qualify as commuter students. The president of the college required them to move into the dormitories and enroll in the Corps of Cadets, or be disenrolled. The Williamses then brought this action to enjoin the president, the dean of the college and the dean of students from enforcing the president's order.

The other two students-appellants, Jerry Moore and Phillip Sartain, who had already been disenrolled for failure to move onto the campus when required to do so, were allowed to join this litigation belatedly with the understanding that their status would not be allowed to interject any new issues. All four students had signed an oath before entering the college that they qualified as commuter students because they actually lived with their parents, and they pledged to notify the college of any change in this arrangement. All four students then changed their living arrangements secretly. The violation of the commuter student rule by these four students is uncontested.

The trial court held an evidentiary hearing at which the students were represented by private counsel and the college was represented by the Attorney General. Subsequently, the court denied the students' motion for

interlocutory injunction and upheld the commuter student rule. This appeal by the students followed.

*The Students' Contentions*

The students-appellants raise three basic challenges to the commuter student rule. 1. They argue that the rule is unconstitutional as a violation of the rights to privacy, travel, free association, and equal protection. 2. They claim that the male-only military requirement in conjunction with the residence requirement violates 20 USC § 1681(a) which prohibits sexual discrimination in federally funded programs. 3. They urge that a preliminary injunction against the rule's enforcement should have been granted because if they were disenrolled from the college they would lose numerous hours of academic credit.

*Constitutionality of the Campus Residency*
*Requirement*

The argument that the commuter student rule is unconstitutional need not long detain us. We start with the proposition that the college has the inherent right to promulgate and to enforce reasonable rules and regulations which impair a student's perfect freedom to do as he pleases. E.g., Esteban v. Central Missouri State College, 415 F2d 1077 (8th Cir. 1969), cert. den. 398 U. S. 965 (1970); Davis v. Southeastern Community College, 424 FSupp. 1341 (E.D.N.C. 1976); *Smith v. Crim,* 240 Ga. 390 (240 SE2d 884) (1977).

As the Attorney General has noted in an excellent brief, numerous other jurisdictions have considered in depth and rejected the very arguments against dormitory residence requirements which these appellants raise. This residency requirement is not a violation of the constitutional rights to privacy and to free association (Prostrollo v. University of South Dakota, 507 F2d 775 (8th Cir. 1974), cert. den. 421 U. S. 952 (1975); Poynter v. Drevdahl, 359 FSupp. 1137 (W.D. Mich. 1972); Pratz v. Louisiana Polytechnic Institute, 316 FSupp. 872 (W.D. La. 1970), affd. 401 U. S. 1004 (1971), nor of the right to travel (Poynter v. Drevdahl, supra; Pratz v. Louisiana Polytechnic Institute, supra). See generally Note, Mandatory Housing Requirements: The Constitutionality of Parietal Rules, 60 Iowa L. Rev. 992

(1975); Annot., Validity, Under Federal Constitution, of Regulation or Policy of College or University Requiring Students to Live in Dormitories or Residence Halls, 31 ALR Fed. 813 (1977).

Appellants contend that the foregoing decisions are inapposite because there was no military discipline present in the on-campus residency involved in those cases. We do not agree. The fact that for males there is an additional military training requirement which is triggered by college residency is a separate issue which we will consider next.

### The Military Training Requirement

The Corps of Cadets is essentially a part of the Reserve Officers Training Corps, and the military training requirement has its genesis in Title 10 of the United States Code, under which provision is made for a source of commissioned officers for the United States Army. The requirements which North Georgia College must meet to retain its status as a recognized military college are detailed in Title 32, Code of Federal Regulations § 562.12 (a) (1) (revised as of July 1, 1977).

Appellants' argument attacking the college's requirement that all resident male students participate in the Corps of Cadets is too vague and formless to subject the requirement to serious challenge. Appellants do not challenge the validity of the military college concept, thus conceding its presumptive validity. They do not attack the military training program directly, nor do they allege any significant right or interest of their own which it impairs. Careful study of their brief leads us to the conclusion that their argument is, basically, that they do not like military discipline, do not care to participate in the Corps of Cadets, and should not be required to participate as a condition of receiving an education at a publicly funded school which is uniquely attractive to them because of its locale and quality. Moreover, though they might originally have escaped the Corps of Cadets by living at home with their parents and commuting, they argue that this similarly unattractive alternative should not have been forced upon them. (The college has now withdrawn this alternative, for their failure to honor their oaths to

live at home and commute.)

Hamilton v. Regents of the University of California, 293 U. S. 245 (1934) approved a state law which established a compulsory course of military training for male university students. In language which addresses the present litigation, the court wrote, "Taken on the basis of the facts alleged in the petition, appellant's contentions amount to no more than an assertion that the due process clause of the Fourteenth Amendment as a safeguard of 'liberty' confers the right to be students in the state university free from obligation to take military training as one of the conditions of attendance. Viewed in the light of our decisions that proposition must at once be put aside as untenable." 293 U. S. at 262.

It is true that there are no recent federal decisions construing a military requirement in light of modern conditions. Nonetheless, in the absence of a challenge which is more pointed than this one, we must conclude that our constitutional question is merely whether appellants have carried the burden of showing that this is not a requirement rationally related to a legitimate state end. See McGowan v. Maryland, 366 U. S. 420 (1961). Appellants simply do not argue anything which would call for a reexamination of the premises of Hamilton. Compare Anderson v. Laird, 466 F2d 283, 295 n. 80 (D. C. Cir. 1972), cert. den. 409 U. S. 1076 (1972).

To state the question, is there a rational relation between North Georgia's concededly valid military college status and the decision of the college that enrollment in the Corps of Cadets should be mandatory and not voluntary for all but a few classes of male students? Under the governing section of the Code of Federal Regulations, supra, without the mandatory military training the college would lose its status as a military college with the Department of the Army. Since the federal regulation is not challenged, the rational relation is thus demonstrated, and the required participation in the Corps of Cadets easily passes the minimal judicial scrutiny which appellants' attack invokes.

Appellants' additional claim that compulsory military training for male students constitutes invidious

sex discrimination and denies males equal protection of the laws because women students participate only voluntarily, is similarly without merit. Contrary to appellants' assertion, a majority of the United States Supreme Court have never ruled that sex is an inherently suspect classification. See Frontiero v. Richardson, 411 U. S. 677 (1973)(four justices found sex an inherently suspect classification); Reed v. Reed, 404 U. S. 71 (1971) (rational relation test applied). The evidence introduced by the college at the hearing included a showing that the need of the armed forces for female officers was adequately met through voluntary training of a relatively small number of women. Mandatoriness of training for male and not female resident students was thus shown to be rationally related to the needs of the services.

Additionally, appellants argue that subjecting them to membership in the Corps of Cadets is unreasonable because exempt women students and exempt classes of males are so numerous that only a small percentage of students are actually required to join the corps. Numbers alone are not decisive. There being no attack here on the validity of the exemptions, this argument raises nothing for decision.

Finally, appellants argue that although they might avoid the military training requirement entirely by attending another state supported school within the state, they should not be forced to go elsewhere when North Georgia College is conveniently located for them. This argument is entirely fallacious. Assuming other state colleges existed, not only might the state choose to maintain only a military college in appellants' locale, but it might choose to maintain there only a college limited to females, which would have the effect of excluding appellants (males) entirely from the only state-supported school close to their homes. E.g., Williams v. McNair, 316 FSupp. 134 (D.S.C. 1970), affd., 401 U. S. 951 (1971). Compare Kirstein v. Rector & Visitors of University of Virginia, 309 FSupp. 184 (D. Va. 1970).

*The Federal Non-discrimination Statute*

Appellants have no cause of action under 20 USC § 1681 (a), because that Act does not authorize an action by a private individual against a college or its officials.

Cannon v. Univ. of Chicago, 559 F2d 1063, 1071-1075 (7th Cir. 1976), affg. 406 FSupp. 1257 (N.D. Ill. 1976).

### Interlocutory Injunction

Appellants have sought a temporary injunction, which under Code Ann. § 55-108 may be granted in the discretion of the trial judge in "clear and urgent cases."

Appellants argue that if the school's order were enforced, loss of course credit attendant upon disenrollment would be irreparably injurious to them; however, they fail to deal with the fact that this need not happen. There is another, less oppressive alternative open to them, which is to move into the residence halls. They fail to show any significant injury to themselves from so doing. Indeed, it would be difficult for them to do so in light of the fact that before entering the college they gave their oaths to comply with this very requirement. Appellant Jerry Moore testified that the military dorms were too rowdy to allow him to study there. However, he never denied the existence of library facilities, and never alleged any reason why he could not use them for studying while living on campus.

Appellants have completely failed to show significant injury to themselves from complying with the school's order. Consequently the trial court did not abuse its discretion in refusing the temporary injunction. See *Wilson v. Sermons,* 236 Ga. 400 (223 SE2d 816) (1976).

### Public Policy

To the extent that appellants seek to raise for the first time on this appeal a public policy issue under Code Ann. § 2-4901 and *Smith v. Crim,* 240 Ga. 390 (240 SE2d 884) (1977), the same will not be considered.

The challenged commuter student rule not being invalid for any reason asserted, the superior court did not err in denying the interlocutory injunction and finding the rule enforceable.

*Judgment affirmed. All the Justices concur.*

Argued March 13, 1978 — Decided May 16, 1978 — Rehearing denied June 8, 1978.

*Charles W. Smith, Jr., Sartain & Carey, Joe Sartain,*

for appellants.

*Arthur K. Bolton, Attorney General, Don A. Langham, First Assistant Attorney General,* for appellees.